IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
May 15, 2023 12:13 PM
ST-2012-CV-00239
**TAMARA CHARLES
CLERK OF THE COURT**

### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **FIRSTBANK PUERTO RICO,** | ) | **CASE NO. ST-2012-CV-00239** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **EDMOND WEBSTER a/k/a EDMOND** | ) | |
| **R. WEBSTER, BERNICE WEBSTER,** | ) | ACTION FOR DEBT, |
| **CLEVE E. WEBSTER a/k/a CLEVE** | ) | FORECLOSURE OF LIENS, |
| **WEBSTER, OASIS DEVELOPMENT, LLC,** | ) | and SPECIFIC PERFORMANCE |
| **and TRIUMPH DEVELOPMENT, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| **NOVELLE JOSEPH,** | ) | |
| | ) | |
| Intervenor/Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **FIRSTBANK PUERTO RICO,** | ) | |
| **EDMOND WEBSTER a/k/a EDMOND** | ) | ACTION FOR REPLEVIN, |
| **R. WEBSTER, BERNICE WEBSTER,** | ) | CONVERSION, ACCOUNTING, |
| **CLEVE E. WEBSTER a/k/a CLEVE** | ) | DEBT, UNJUST ENRICHMENT, |
| **WEBSTER, OASIS DEVELOPMENT, LLC,** | ) | and PUNITIVE DAMAGES |
| **and TRIUMPH DEVELOPMENT, LLC,** | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| **FIRSTBANK PUERTO RICO,** | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| **NOVELLE JOSEPH and the OFFICE** | ) | |
| **OF THE VIRGIN ISLANDS MARSHAL,** | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |
| _____ | ) | |

Cite as 2023 VI Super 24U

### **MEMORANDUM OPINION**

¶1     **THIS MATTER** is before the Court on Plaintiff FirstBank Puerto Rico's ("FirstBank" or "Plaintiff") Motion for Summary Judgment and the corresponding Statement of Undisputed Material Facts ("SUMF"), filed concurrently on March 29, 2019. The Defendants in this matter, Edmond Webster, Bernice Webster,[1] Cleve Webster, Oasis Development, LLC, and Triumph Development, LLC (collectively, the "Defendants"), did not file a responsive pleading. For the reasons set forth herein, the Court will grant FirstBank's motion and enter partial judgment in favor of FirstBank.

## BACKGROUND AND PROCEDURAL POSTURE

¶2     On May 11, 2012, FirstBank filed a complaint against the Defendants, seeking a judgment of debt and foreclosure. The complaint alleges the Defendants defaulted on a series of construction loans and loan modifications FirstBank issued the Defendants between 2007 and 2010. In response to FirstBank's complaint, Defendants filed their answer and several counterclaims on July 30, 2012.[2] After lengthy motions practice, the Superior Court entered several judgments in favor of FirstBank in the principal amount of One Million, Five Hundred Thirty One Thousand Two Hundred Twelve Dollars and Eighty cents ($1,531,212.80) plus interest and ordered the mortgaged properties be sold by the Virgin Islands Marshal at Marshal's sale ("Judgment").

---

[1] Documents sometimes identify Bernice Webster as Berenice Webster.
[2] All of the Defendants' counterclaims were previously dismissed by another judicial officer. *See* Memorandum Opinion entered on January 17, 2013, dismissing Counterclaims I, II, and IV; *see also* Memorandum Opinion entered March 7, 2014, granting FirstBank's motion for summary judgment on Counterclaim III. However, the Supreme Court has since reversed the lower court's rulings on the merits. *See Webster v. FirstBank P.R.*, 66 V.I. 514 (V.I. 2017) (ordering that "all the Superior Court's rulings adjudicating the parties' claims on the merits, including, but not limited to, the July 7, 2016, June 12, 2016, March 7, 2014, August 9, 2013, and March 6, 2013 orders are vacated and shall be referred to mediation on remand."). Therefore, the Court finds that, at a minimum, Counterclaim III has been reinstated. The Court will grant the parties time to brief their stances with respect to the status of the Counterclaims, and how they would like to proceed with respect to those allegations. The Court will include details in the order issued concurrently with this Memorandum Opinion.

¶3     Prior to the Marshal's sale, the Defendants filed a timely appeal with the Virgin Islands Supreme Court, on or about July 18, 2016. However, the Marshal's sale still took place on December 14, 2016. Novelle Joseph was the winning bidder at that sale and paid the sale proceeds to the Cashier of the Superior Court. The Superior Court entered an order confirming the sale on February 24, 2017, with the redemption period scheduled to expire on August 24, 2017. However, the Supreme Court issued an opinion[3] on April 24, 2017, vacating the Judgment and order of foreclosure and all the Superior Court's dispositive rulings on the parties' claims.[4] The Supreme Court remanded the matter and referred it back for mediation and assignment to a different judge. The parties mediated on October 4, 2018. However, the mediation report states, "the parties have reached a total impasse, all issues require Court action."[5]

¶4     FirstBank filed the instant Motion for Summary Judgment on its debt and foreclosure of lien claims on March 29, 2019. FirstBank filed a SUMF supporting its motion. The Defendants did not submit a responsive pleading.

---

[3] *See Webster v. FirstBank P.R.*, 66 V.I. 514 (V.I. 2017).

[4] As discussed in footnote 2, the Supreme Court's findings effectively reversed the prior dismissal of the four counterclaims. Counterclaim III is directly reinstated, because the Supreme Court specifically references the Memorandum Opinion and corresponding March 7, 2014, Order in which the Superior Court granted summary judgment on that claim. However, given that the Supreme Court stated that its reversal was "not limited to" the dates and opinions specifically referenced within its opinion and that all dispositive rulings are vacated, the Court finds that Counterclaims I, II, and IV are also potentially reinstated. The Court will grant the parties time to address their respective positions on the Counterclaims.

[5] *See* Mediation Report, signed Henry C. Smock, Esq. on October 24, 2018.

## UNDISPUTED FACTS

¶5    The following pertinent facts are undisputed.[6,7]

1.    Defendants, as individuals or collectively, own real property described as Parcel Nos. 1X-1-A, 1X-1-D, 1X-1-H, 1X-1-J, 1X-1-K, and 1-143-5 Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands.[8] Specifically, Defendant Oasis Development, LLC ("Oasis") owns Parcel Nos. 1X-1-A and 1X-1-H Estate Wintberg, St. Thomas, V.I. Defendants Edmond Webster, Bernice Webster, and Cleve Webster jointly own Parcel Nos. 1X-1-J and 1X-1-K Estate Wintberg, St. Thomas, V.I. Defendant Triumph Development ("Triumph") owns Parcel No. 1X-1-D Estate Wintberg, St. Thomas, V.I. Edmond Webster and Bernice Webster own Parcel No. 1-143-5 Estate Wintberg, St. Thomas, V.I.[9]

2.    The mortgaged properties are Parcel Nos. 1X-1-A and 1X-1-J, 1X-1-D, and 1X-1-H Estate Wintberg, St. Thomas, V.I.

3.    In September 2007, Oasis, Cleve Webster, Edmond Webster, and Bernice Webster received a loan from First Bank for Two Hundred Seventy Five Thousand Dollars

---

[6] Attached to its SUMF, FirstBank included thirty-five (35) exhibits, including, notably, Exhibit 1, Declaration of Sharmane Brookes, then employed as the Vice President, Business Relationship Manager of the Eastern Caribbean Region of FirstBank. Ms. Brookes declared her personal knowledge concerning the loans at issue in the instant matter, made by FirstBank to Defendants. Ms. Brookes declared she reviewed paragraphs eight (8) through thirty-five (35) of FirstBank's SUMF and attests the facts stated therein are true and correct. She further reviewed attached exhibits 9, 10, and 12 through 35, and declares she is familiar with those documents because they were either used in the documentation of the loans from FirstBank or in demanding repayment after default or accounting for the amounts due under the loans at issue. She attested these documents are true and correct copies of the originals.

[7] Since Defendants did not file any responsive pleading in the instant matter, when the Court cites to paragraphs or exhibits, it is referring to the FirstBank's motion for summary judgment, FirstBank's SUMF, and the thirty-five (35) exhibits attached thereto.

[8] *See* SUMF at ¶¶ 3-7; *see also* Exhibits 5, 6, 7, & 8 attached to FirstBank's SUMF.

[9] None of the mortgages in this litigation are recorded against Parcel No. 1-143-5 Estate Wintberg, St. Thomas, V.I.

($275,000.00), and those Defendants executed both a note ("2007 Note")[10] and a mortgage ("2007 Mortgage")[11] on Parcel No. 1X-1-H Estate Wintberg, to secure the loan ("2007 Loan").[12] In September 2011, the aforesaid Defendants entered into a Modification of the Note, which made no substantive procedural changes to the 2007 Loan, but increased its principal balance to $283,482.86 and afforded Defendants a six (6)-month moratorium on payments.[13]

4. On March 6, 2008, Oasis executed a Construction Loan Agreement pursuant to which FirstBank loaned Eight Hundred Twenty One Thousand Dollars ($821,000.00) to Oasis, and Oasis executed an Installment Note ("2008 Note")[14] for the sum of $821,000 in favor of First Bank ("2008 Loan"). The March 6, 2008, Loan Agreement required the Websters, as owners of Parcel No. 1X-1-J, to provide FirstBank with an easement in valid recordable form, sufficient to cure the encroachment as evidence on the survey of Nelson Petty, P.S., dated February 24, 2008. Cleve Webster, Edmond Webster, and Bernice Webster acted as guarantors on this 2008 Note by executing a Continuing Guaranty (Unlimited) where they jointly, severally, and unconditionally promised to pay FirstBank any and all indebtedness of Oasis ("2008 Guaranty"). In addition, to secure the loan, Cleve Webster, Edmond Webster, and Bernice Webster executed a first priority mortgage ("2008 Mortgage"),[15] on Parcel No. 1X-1-J Wintberg in favor of FirstBank.[16] And, as further security for the 2008

---

[10] *See* SUMF at ¶ 8; *see also* Exhibit 9 attached to FirstBank's SUMF.
[11] *See* SUMF at ¶ 9; *see also* Exhibit 10 attached to FirstBank's SUMF.
[12] *See* SUMF at ¶¶ 8-9; *see also* Exhibits 9 & 10 attached to FirstBank's SUMF.
[13] *See* SUMF at ¶ 10; *see also* Exhibit 12 attached to FirstBank's SUMF.
[14] *See* SUMF at ¶ 12; *see also* Exhibit 15 attached to FirstBank's SUMF.
[15] *See* SUMF at ¶¶ 14-15; *see also* Exhibits 17 & 18 attached to FirstBank's SUMF.
[16] *See* SUMF at ¶ 11; *see also* Exhibit 13 attached to FirstBank's SUMF.

Note, Oasis executed a First Priority Mortgage Construction Security Interest in favor of FirstBank, covering Parcel 1X-1-A.

5. As yet further security for the 2008 Note, Oasis, Cleve Webster, Edmond Webster, and Bernice Webster executed an Assignment of Leases and Rents ("Rents Assignments") pursuant to which they assigned all of their rights, title, and interests in the rent, income, receipts, revenues, and profits arising out of the use or occupancy of Parcel 1X-1-A and Parcel No. 1X-1-J. On March 6, 2008, Edmond Webster executed a Conditional Assignment of Project Permits in which he assigned to First Bank all rights, title, and interests in certain building permits, including but not limited to Earth Change Permit No. STT-453-92, Building Permit No. 838-92, Road Permit No. 281-92, and any future permits he may possess ("Permits Assignments"). Edmond Webster also executed a Conditional Assignment of Plans and Specifications in which he assigned to First Bank all rights, title, and interest in under and to the Plans and Specifications entitled Wintberg Village Apartments dated September 4, 1992, prepared by Marshall Bernier Development Corp. ("Plans Assignment").

6. The 2008 Loan and 2008 Mortgage were modified on two occasions: first, on June 18, 2009, Oasis, Cleve Webster, Edmond Webster, and Bernice Webster entered into a Modification of First Priority Mortgage, First Priority Mortgage/Construction Security Interest and Assignment of Leases and Rents ("First Modification") that, among other things, corrected the P.W.D. map no. and acreage of No. 1X-1-A, as described in the Oasis Mortgage and increased the principal amount of the 2008 Loan to One Million, Ninety One

Thousand dollars ($1,091,000.00)[17] ("2009 Loan"). The First Modification covers No. 1X-1-A and 1X-1-J. Oasis executed a Substitute Installment Note for the principal sum of $1,091,000. Oasis, Cleve Webster, Edmond Webster, and Bernice Webster also executed a First Amendment to Construction Loan Agreement and Security Instruments ("First Amendment") to reflect the increase in the 2009 Loan.

7. On January 21, 2010, Defendants entered into a Second Modification of First Priority Mortgage, First Priority Mortgage/Construction Security Interest and Assignment of Leases and Rents and Second Priority Mortgage ("Second Modification"), which granted FirstBank a second priority mortgage lien and assignment of leases and rents over No. 1X-1-D and 1X-1-H. The Second Modification also included an additional assignment of leases and rents on Parcel No. 1-143-5, as authorized by Edmond Webster and Bernice Webster, and it also increased the principal amount of the 2009 Loan to One Million Five Hundred Forty-One Thousand Dollars ($1,541,000.00)[18] ("2010 Loan"). On January 21, 2010, Oasis executed a Substitute Installment Loan for the principal amount of $1,541,000 ("Second Substitute Installment Note").

8. On January 21, 2010, Triumph executed a Nonrecourse Continuing Guaranty (Limited) for the repayment of the 2010 Loan ("Triumph Guaranty").

9. On January 21, 2010, Defendants executed a Second Amendment to Construction Loan Agreement and Security Instruments ("Second Amendment"), which confirmed the second increase of the 2008 and 2009 Loans and provided for guaranties from Triumph, Edmond Webster, Bernice Webster, and Cleve Webster for repayment of the 2010 Loan.

---

[17] *See* SUMF at ¶ 19; *see also* Exhibit 22 attached to FirstBank's SUMF.
[18] *See* SUMF at ¶ 22; *see also* Exhibit 27 attached to FirstBank's SUMF.

10. Both the 2007 Note and the 2008 Note provide that, upon default, FirstBank may issue a notice of default to Defendants notifying them that if they do not pay the overdue amount by a certain date, FirstBank may accelerate the loan and require Defendants to immediately pay the full unpaid principal and all interest due on that amount.[19]

11. The 2007 and 2008 Mortgages state that if FirstBank institutes an acceleration of the amount due, and the borrower fails to cure its default, FirstBank is entitled to foreclose on the properties by judicial proceeding without additional demand.[20]

12. On August 17, 2011, FirstBank issued a written demand entitled "Notice of Default" to the Defendants for repayment of overdue principal, interest, late charges, and insurance paid by FirstBank, associated with the 2008 Loan. In pertinent part, the letter states

> This is to advise that you are in default . . . You have thirty (30) days to cure your default. To cure your default, you must pay FirstBank the amount of [1,564,215.64] representing principal, interest, late charges, and fees by September 17, 2011. . . If you have not cured the defaults . . ., FirstBank may, at its option, declare all sums secured by the Mortgages immediately due and payable without further demand. Failure to cure the default . . . may result in acceleration of the sums secured by the Mortgages, foreclosure of the Mortgages through judicial proceedings, a debt action, and sale of the properties.[21]

13. On March 27, 2012, FirstBank issued a written demand entitled "Notice of Default" to the Defendants for repayment of overdue principal, interest, late charges, and fees associated with the 2007 Loan. In pertinent part, the letter states

> This is to advise you that you are in default . . . for failing to make the required monthly payments of principal and interest when due . . . You have thirty (30) days to cure your default. To cure your default, you must pay FirstBank the amount of $3,775.84 representing principal, interest, late charges and fees by April 26, 2012 . . . Additionally you must continue to make your regular monthly payments of

---

[19] *See* Exhibit 9, the 2007 Note, at ¶ 6; *see also* Exhibit 15, 2008 Note, at page 2, both declared true and correct in Exhibit 1.
[20] *See* Exhibit 10, the 2007 Mortgage, at ¶ 22; *see also*, Exhibit 17, at ¶¶ 13 & 14.1, both declared true and correct in Exhibit 1.
[21] *See* SUMF at ¶ 28; *see also* Exhibit 32 attached to FirstBank's SUMF.

principal and interest . . . in the amount of $2,775.80 . . . If you have not cured the defaults . . ., FirstBank may, at its option, declare all sums secured by the Mortgages immediately due and payable without further demand. Failure to cure the default . . . may result in acceleration of the sums secured by the Mortgages, foreclosure of the Mortgages through judicial proceedings, a debt action, and sale of the properties.[22]

14. On May 11, 2012, First Bank initiated this foreclosure case.

15. Defendants have acknowledged they were in default.[23]

16. As of February 27, 2019, the amounts Defendants owed to FirstBank on the 2007 Loan were: Two Hundred Seventy-Five Thousand, Six Hundred Eleven dollars, and Fifty-Five cents ($275,611.55) in unpaid principal, One Hundred Ten Thousand, One Hundred Thirty-Three dollars, and Ninety-Two cents ($110,133.92) in interest (calculated at seven and five-eighths percent (7.625%)), Six Thousand, Seven Hundred Nine dollars and Seventy-Six cents ($6,709.76) in escrow/overdraft fees, and Five Hundred Twenty dollars and Fifteen cents ($520.15) in unpaid late charges, for a total sum of Three Hundred Ninety-Two Thousand, Nine Hundred Seventy-Five dollars and Thirty-Eight cents ($392,975.38).[24]

17. As of February 28, 2019, the amounts Defendants owed to FirstBank on the 2008 Loan and 2008 Modifications were: One Million, Five Hundred Thirty-One Thousand, Two Hundred

---

[22] *Id.*

[23] In November 2012, FirstBank filed a Motion for Summary Judgment ("2012 Motion"), to which they attached a corresponding statement of undisputed facts ("2012 SUMF"). The Defendants responded to the 2012 Motion, filing an Opposition in February 2013 ("2013 Opposition"). *See* Exhibits 2 & 3 attached to FirstBank's SUMF. Within the 2012 SUMF, FirstBank states Defendants "have failed, among other things, to make the required monthly payments of principal and interest due to FirstBank as required in the Notes and Security Documents and are, therefore, in default under the terms and conditions of the Notes and Security Documents." *See* Exhibit 2 attached to FirstBank's SUMF, at ¶ 28. Defendants responded to this allegation in the 2013 Opposition, stating "Defendants agree that this fact is undisputed for the purpose of ruling on the motion for summary judgment only." *See* Exhibit 2 attached to FirstBank's SUMF, at ¶ 28.

[24] *See* Exhibit 33, FirstBank's Payoff Statement re: Cleve Webster and Edmond Webster, dated February 27, 2019. These amounts due are declared true and correct in Exhibit 1, at ¶ 4.

Twelve dollars, and Eighty cents ($1,531,212.80) in unpaid principal, Nine Hundred Sixty Thousand, Nine Hundred Eighty-Nine dollars, and Twenty-Six cents ($960,989.26) in interest (calculated at eight and one half percent (8.5%)), Two Million, Three Hundred Sixty-Six Thousand, Nine Hundred Sixty-Six dollars, and Twenty-Seven cents ($2,366,966.27) in unpaid late charges, for a total sum of Four Million, Eight Hundred Fifty-Nine Thousand, One Hundred Sixty-Eight dollars, and Thirty-Three cents ($4,859,168.33).[25]

## LEGAL STANDARD

### A. Summary Judgment Standard

¶6    Summary Judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

V.I. R. CIV. P. 56(a). Rule 56 further provides that "[e]ach summary judgment motion shall include a statement of undisputed facts in a separate section within the motion" and that "[e]ach paragraph stating an undisputed fact shall be serially numbered and each shall be supported by affidavit(s) or citations identifying specifically the location(s) of the material(s) in the record relied upon regarding such fact." V.I. R. CIV. P. 56(c)(1). The Virgin Islands Supreme Court has held that summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the

---

[25] *See* Exhibit 34, FirstBank's Payoff Quote re: Oasis Development, LLC, dated February 28, 2019. These amounts due are declared true and correct in, Exhibit 1, at ¶ 4.

nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party." *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016). Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to any material fact[.]" *James v. Mosler*, 2021 VI SUPER 53U, at ¶ 10 (citing *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013)).

¶7     The Virgin Islands Supreme Court states the lower court must grant summary judgment only when "the evidence in the summary judgment records supports this relief," regardless of whether the nonmovant submits a response to the motion. *Charles v. CBI Acquisitions, LLC*, No. ST-15-CV-279, 2016 WL 2905340, at *5 (V.I. Super. Ct. May 9, 2016) (citing *Vanterpool v. Gov't of the Virgin Islands*, 63 V.I. 563, 583 (V.I. 2015); *Martin v. Martin*, 54 V.I. 379, 388 (V.I. 2010) (stating "[s]ummary judgment will not be entered automatically if the non-moving party fails to file an opposition to the motion")). Although not ideal to "fail to oppose a summary judgment motion, even uncontested motions must be examined carefully by the [trial] court to determine whether no genuine issue of material fact remains and whether judgment is appropriate as a matter of law." *Martin*, 54 V.I. at 389 (quoting STEVEN BAICKER–MCKEE ET AL., 2009 FEDERAL CIVIL RULES HANDBOOK, 1093 (ThompsonWest 2008)). The Court may not simply accept as true the moving party's itemization of undisputed facts in light of the lack of an opposition, but it must still conduct an independent review of the record to determine whether the evidence in the summary judgment records supports the requested relief. *MSI Bldg. Supplies, Inc. v. Atl. Seafood Rest., Inc.*, No. ST-15-CV-411, 2016 WL 11723599, at *2 (V.I. Super. Ct. Aug. 22, 2016) (citing *Vanterpool*, 63 V.I. at 583).

### B. Debt and Foreclosure Actions

¶8 Under Virgin Islands common law, an action for debt requires the plaintiff to demonstrate that (1) the defendant owes a certain amount and (2) the defendant is or should be obligated to pay that amount. *Greenleaf Commons, LLC v. St. John Day Spa & Salon, LLC*, 2021 VI Super 2U ¶ 9 (citing *Carlos Warehouse v. Thomas*, 64 V.I. 173, 193 (V.I. Super. Ct. 2016) (performing a *Banks* analysis to determine the most appropriate rule for the U.S. Virgin Islands)).

¶9 Title 28 of the Virgin Islands Code, Section 531 governs foreclosure of liens and recovery of debt. The provision states:

> (a) A lien upon real property, other than that of a judgment, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby, by an action of an equitable nature. In such action, in addition to the judgment of foreclosure and sale, if it appears that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also adjudge a recovery of the amount of such debt against such person or persons, as the case may be, as in the case of an ordinary judgment for the recovery of money.
>
> (b) Prior to the entry of any judgment of foreclosure, the parties must provide the Court with evidence that a good faith effort was made to settle the matter through mediation. The type and form of the mediation report shall be prescribed by the Superior Court of the Virgin Islands.

28 V.I.C. § 531. Virgin Islands courts have interpreted 28 V.I.C. § 531 to require three elements to prevail on a foreclosure action: "(1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." *Carrillo v. Citimortgage*, Inc., 63 V.I. 670, 674 (V.I. 2015) (citing *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 232 (V.I. 2013)).

## DISCUSSION

**¶10**     As a threshold matter, the Court acknowledges that, following the order from the V.I. Supreme Court, the parties attempted to settle this matter through mediation, as is required prior to entry of judgment of foreclosure pursuant to 28 V.I.C. § 531(b), but they were unable to reach an agreement.[26] Because the parties satisfied that aspect of the pertinent statute and were unsuccessful, the Court will assess the merits of FirstBank's motion for summary judgment.

**¶11**     FirstBank argues it is entitled to summary judgment against the Defendants on its debt and foreclosure of lien claims because it has established that the Defendants executed notes and security documents and they defaulted in payment pursuant to those documents, and therefore FirstBank is entitled to foreclose. FirstBank asks this Court to allow the mortgages to be foreclosed, the properties sold at judicial sale, and the proceeds from the sale(s) distributed in order of the priority of liens. The Defendants did not file an opposition or response to FirstBank's motion for summary judgment. Nevertheless, the Court must review the summary judgment record to determine whether the facts FirstBank presents in its SUMF are sufficient to grant summary judgment. *See MSI Bldg. Supplies, Inc.*, 2016 WL 11723599, at *2.

### I.     FirstBank has Shown Defendants Owe and are Obligated to Pay $5,252,143,71, Satisfying the Requirements for an Action for Debt.

**¶12**     An action for debt requires the plaintiff to demonstrate that (1) the defendant owes a certain amount and (2) the defendant is or should be obligated to pay that amount. *Greenleaf Commons, LLC*, 2021 VI Super 2U ¶ 9.

---

[26] *See* Mediation Report, signed Henry C. Smock, Esq. on October 24, 2018.

¶13    In the instant matter, within her Declaration attached to the SUMF, FirstBank Vice President Brookes attested to the truth and correctness of the majority of the SUMF, including paragraph 30 through 34, as well as Exhibits 33 and 34, detailing the current amounts due on both the 2007 and 2008 Loans.[27] FirstBank has further shown that Defendants are obligated to pay this amount through the provision of the Loan documents, Modifications, Mortgage documents, Notes, and Guaranties, detailing the loans and the securities thereon.[28] As such, the Court finds it is undisputed that Defendants are indebted to FirstBank.

## II. FirstBank has Satisfied the Three Elements Required for a Foreclosure Action.

### A. Defendants Executed Notes and Mortgages, Satisfying the First Required Element for a Foreclosure Action.

¶14    The first element for a foreclosure action requires that the debtor executed a promissory note and mortgage. *Carrillo*, 63 V.I. at 674. FirstBank argues the Defendants admitted to executing the notes and security documents. Indeed, attached to the SUMF, FirstBank includes documentation showing that Defendants executed the 2007 Note,[29] the 2007 Mortgage,[30] and, in March 2008, the parties executed the 2008 Note[31] and the 2008 Mortgage.[32] FirstBank further

---

[27] *See* the Findings of Fact section herein, at ¶ 16, noting that as of February 27, 2019, Defendants owed FirstBank a total sum of $392,975.38 on the 2007 Loan. *See also* the Findings of Fact section herein, at ¶ 17, noting that as of the date of the instant motion, Defendants owed FirstBank a total sum of $4,859,168.33 on the 2008 Loan.

[28] *See* Exhibit 4, Defendants' 2012 Answer, at ¶¶ 10 -13, 15, and 16, admitting to the existence and execution of the 2007 and 2008 Notes, the 2007 and 2008 Mortgages, and the 2008 Modifications; *see also* Exhibit 3, 2013 Opposition, at ¶¶ 8-27, where Defendants respond to FirstBank's Statement of Undisputed Facts and agree with FirstBank's assertions regarding the existence and execution of the 2007 and 2008 Notes and Mortgages and the 2008 Modifications, among additional security documentation associated with the 2007 and 2008 Loans.

[29] *See* Exhibit 9, the 2007 Note, declared true and correct in Exhibit 1.

[30] *See* Exhibit 10, the 2007 Mortgage, declared true and correct in Exhibit 1.

[31] *See* Exhibit 15, the 2008 Note, declared true and correct in Exhibit 1.

[32] *See* Exhibit 17, the 2008 Mortgage, declared true and correct in Exhibit 1.

points to Defendants' own admissions to executing the 2007 and 2008 Notes and Mortgages and the 2008 Modifications, within Defendants' original answer in response to the original complaint and Defendants' 2013 Opposition.[33]

¶15    Upon review of the summary judgment record, and without any information to the contrary, the Court finds no dispute to the fact that Defendants executed the various Notes and Mortgages.

## B. Defendants Defaulted Under their Notes and Mortgages, Satisfying the Second Required Element for a Foreclosure Action.

¶16    The second element for a foreclosure action requires the debtor be in default under the terms of the note and mortgage. *Carillo*, 63 V.I. at 674. In the SUMF, FirstBank provides proof that, pursuant to the terms of the Notes and Mortgages, it made written demands upon the Defendants for repayment of overdue principal, interest, late charges, and insurance paid for by FirstBank. After the defaults were not cured, FirstBank accelerated indebtedness due under the Notes and security documents and demanded payment. FirstBank claims that, as of the date of submission of the instant motion, the Defendants have failed to cure the defaults and therefore remain in default. FirstBank claims the Defendants have made no payments since 2010, but during the pendency of this matter FirstBank has had to continue paying insurance premiums and real property taxes on the properties. In the instant motion, FirstBank points out the Defendants conceded their default within the 2013 Opposition.[34]

---

[33] *See* Exhibit 4, 2012 Answer, at ¶¶ 10, 12, 14, 17, 22 &25, where Defendants admit the existence and execution of the 2007 and 2008 Notes and Mortgages and the 2008 Modifications; *see also* Exhibit 3, 2013 Opposition, at ¶¶ 8-27, where Defendants admit to the existence and section of the 2007 and 2008 Notes and Mortgages and the 2008 Modifications, among additional security documentation associated with the 2007 and 2008 Loans.

[34] *See*, Exhibit 3, the 2013 Opposition, at ¶ 28 (agreeing with FirstBank's statement in 2012 SUMF, ¶ 28, which states "[Defendants] have failed, among other things, to make the required monthly payments of principal and interest due to FirstBank as required in the Notes and Security Documents and are, therefore, in default under the terms and conditions of the Notes and Security Documents.")

¶17    Additionally, in her Declaration attached to the SUMF, FirstBank Vice President Brookes attested to the truth and correctness of the majority of the SUMF, including paragraphs 30 through 34, as well as Exhibits 33 and 34, all detailing Defendants' failure to cure their defaults and the current amounts due on both the 2007 and 2008 Loans.[35]

¶18    There is no evidence that Defendants have cured their defaults on either the 2007 Note, 2008 Note, 2010 Note, Substitute Installment Note, or Second Substitute Installment Note, nor made any interim or additional payments on the balances due since the filing of the instant motion. Based on the summary judgment record and making all inferences in favor of the nonmovant, the Court must deduce that Defendants have remained in default and have not made any additional payments on the various notes. Therefore, the Court finds that there is no genuine dispute to the fact of Defendants' default on the Notes and Mortgages at issue in this matter.

### C. FirstBank is Entitled to Foreclose on the Property, Satisfying the Third Required Element for a Foreclosure Action.

¶19    The third element required for a foreclosure action is that the lender is authorized to foreclose on the property mortgaged as security for the note. *Carillo*, 63 V.I. at 674. FirstBank argues it is entitled to summary judgment because it has submitted evidence showing its liens on the mortgaged properties are first-priority liens because they were recorded with the recorder of deeds and there were no other liens recorded against the mortgaged properties before FirstBank recorded its mortgages or before it recorded a notice of lis pendens. Accordingly, FirstBank argues it is authorized to foreclose on the mortgaged properties provided as security for repayment of the

---

[35] The amounts due are listed within the Findings of Fact herein, at ¶¶ 16 & 17.

notes and all other amounts owed under or on account of the security documents. They note the amount of debt owed is established by the Declaration of Sharmane Brookes.[36]

¶20    The documents securing the 2007, 2008, 2009, and 2010 Loans provide recourse for FirstBank to foreclose upon the properties in the event of default. The 2007 Mortgage states, in pertinent part,

> notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Agreement and foreclosure and sale of the Property.[37]

The 2008 Mortgage states, in pertinent part,

> If an Event of Default shall have occurred and be continuing, the Mortgagee may proceed to foreclose this Mortgage and to protect and enforce its rights by an action at law, suit in equity, or other appropriate proceeding . . .[38]

Further, both demand letters include language enabling FirstBank to foreclose if the default is not cured. Additionally, the SUMF includes a declaration from Leslie E. Bush, who performed a title and lien search, and determined that no other liens were recorded against the mortgaged properties prior to the recordation of the security documents or the notice of lis pendens.[39]

¶21    The Court finds that based on the language within the security documents, and the later demand letters, as well as the confirmation that FirstBank is the priority lien holder on the properties, FirstBank is entitled to summary judgment and an order of foreclosure. Accordingly, FirstBank has satisfied the third requirement for a foreclosure action, and the Court finds FirstBank is entitled to foreclose.

---

[36] *See* Declaration of Sharmane A. Brookes, signed on March 29, 2019, attached as Exhibit 1 to FirstBank's SUMF.
[37] *See* 2007 Mortgage, at ¶ 22, admitted as Exhibit 10 to FirstBank's SUMF.
[38] *See* 2008 Mortgage at ¶14.1, admitted as Exhibit 17 to FirstBank's SUMF.
[39] Declaration of Leslie E. Bush, executed March 27, 2019, attached as Exhibit 11 to FirstBank's SUMF.

### III. The Court Will Order Partial Judgment in Favor of FirstBank.

¶22    Because at least one Counterclaim was reinstated and remains pending, the Court is not yet permitted to enter final judgment in this matter, so the Court will only enter an order for partial judgment.[40] For purposes of the existing motion, the Court finds FirstBank is entitled to judgment against Defendants, jointly and severally, with respect to the 2008 Loan and 2008 Modifications in the principal amount of One Million, Five Hundred Thirty One Thousand, Two Hundred Twelve dollars, and Eighty cents ($1,531,212.80), plus accrued interest as of February 28, 2019, in the amount of Nine Hundred Sixty Thousand, Nine Hundred Eighty Nine dollars and Twenty Six cents ($960,989.26), plus late charges in the amount of Two Million, Three Hundred Sixty Six Thousand, Nine Hundred Sixty Six dollars and Twenty Seven cents ($2,366,966.27), for a total sum of Four Million, Eight Hundred Fifty Nine Thousand, One Hundred Sixty Eight dollars and Thirty Three cents ($4,859,168.33), plus interest at the daily rate of $361.54 from March 1, 2019 until Judgment is entered. Thereafter, interest shall accrue at the statutory rate of four percent (4%) per annum until the Judgment is satisfied.

¶23    In addition, FirstBank is entitled to the original Plans and Specifications entitled for Wintberg Village Apartments dated September 4, 1992, and prepared by Marshall Bernier Development Corp. The Court will order that Defendants turn over these plans within thirty (30) days of entry of judgment.

¶24    FirstBank is also entitled to all of Defendants' fights, title, and interest in Earth Change Permit No. STT-453-92, Building Permit No. 838-92, Road Permit No. 281-92, and any other

---

[40] As referenced in footnotes 2 and 4, above, the Court will allow the parties time to present their positions regarding the Counterclaims. The Court will provide details of such allowance in the order entered concurrently with this Memorandum Opinion.

permits that Defendants may possess related to the properties securing the Construction Loan, and the Court will order Defendants to turn over these documents within thirty (30) days of entry of judgment.

¶25    FirstBank is also entitled to an easement over Parcel No. 1X-1-K Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands, as shown on O.L.G. Drawing No. D9-7961-T007, in valid and recordable form, sufficient to cure the encroachment as evidenced on the survey of Nelson M. Petty, Jr., P.E. dated February 24, 2008. The Court will order Defendants to convey such easement within thirty (30) days of entry of judgment.

¶26    FirstBank will be awarded Judgment against Oasis and the Websters, jointly and severally, for the following amounts due under the 2007 Note or Loan No. 249004: principal in the amount of Two Hundred Seventy Five thousand, Six Hundred Eleven dollars, and Fifty Five cents ($275,611.55), plus accrued interest as of February 28, 2019 in the amount of One Hundred Ten thousand, One Hundred Thirty Three dollars, and Ninety Two cents ($110,133.92), plus escrow advances in the amount of Six Thousand, Seven Hundred Nine dollars and Seventy Six cents ($6,709.76), plus late charges of Five Hundred Twenty dollars and Fifteen cents ($520.15), for a total sum of Three Hundred Ninety Two Thousand, Nine Hundred Seventy Five dollars, and Thirty Eight cents ($392,975.38), plus interest at the daily rate of Fifty Seven dollars and Fifty Eight cents ($57.58) from March 1, 2019 until this Judgment is entered. Thereafter, interest shall accrue at the statutory rate of four percent (4%) per annum until the Judgment is satisfied.

¶27    FirstBank shall credit against the sums awarded in the proceeding paragraphs any rents collected by FirstBank with respect to the Mortgaged Properties, as defined below, and Parcel No. 1-143-5 Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands, as shown on P.W.D. No. A9-31-T65 ("Parcel 1-143-5"), after entry of judgment.

¶28     FirstBank is entitled to an award of costs and attorneys' fees in an amount to be determined upon the submission of appropriate applications filed at any time prior to entry of an order confirming the sale of the Mortgaged Properties.

¶29     FirstBank is entitled to collect and receive all rents and revenues generated by any leases or occupancy agreements concerning the Mortgaged Properties, as defined below, and Parcel 1-143-5 or any portion thereof, to the exclusion of Defendants, who shall turnover and remit to FirstBank any such rents and revenues that came into their possession or that may hereafter come into their possession after FirstBank provided notice of revocation of Defendants' license to collect rents pursuant to this Court's Order dated March 21, 2013.[41]

¶30     FirstBank's Construction Loan mortgage liens and security interests covering Parcel 1X-1-A and Parcel 1X-1-J Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands, as shown on P.W.D. No. D9-5649-T94 and O.L.G. Drawing No. D9-7961-T007 respectively ("Parcel No. 1X-1-A" and "Parcel No. 1X-1-J"), are determined to be first priority liens.

¶31     FirstBank's Construction Loan mortgage liens and security interests covering Parcel No. 1X-1-D and Parcel No. 1X-1-H Estate Wintberg, No. 3 Great Northside Quarter, St. Thomas, Virgin Islands as shown on O.L.G. Drawing No. D9-7961-T007 ("Parcel No. 1X-1-D" and "Parcel No. 1X-1-H") are determined to be second priority liens.

¶32     FirstBank's Loan No. 249004 mortgage lien is determined to be a first priority lien covering Parcel No. 1X-1-H.

---

[41] That notice of revocation was provided to Defendants on March 28, 2013. Although the March 7, 2014 Order similarly required Defendants to turnover and remit to FirstBank any rents and revenues that came into their possession after FirstBank provided notice of revocation of Defendants' license to collect rents pursuant to this Court's Order dated March 21, 2013, to date, Defendants have turned over no such rents and revenues.

¶33    Any other claims, liens or encumbrances that may have been recorded against Parcel No. 1X-1-A, Parcel No. 1X-1-D, Parcel 1X-1-H, and Parcel 1X-1-J (collectively, the "Mortgaged Properties") after the date of recording of FirstBank's mortgages, security instruments, and/or the Notice of Lis Pendens regarding this matter, or that may be recorded any time hereafter against the interests of Defendants and their successors and assigns in the Mortgaged Properties will be foreclosed in the judgment.

## CONCLUSION

¶34    Given the analysis herein, the Court will grant FirstBank partial summary judgment. The Court finds FirstBank has provided sufficient, undisputed facts showing Defendants are indebted to FirstBank, that the Defendants executed various notes and mortgages, Defendants are in default under the terms of the security documents, and FirstBank is authorized to foreclose on the mortgaged properties. The Court also finds, however, that at least one Counterclaim was reinstated when the Supreme Court reversed the Superior Court's previous finding of summary judgment, so the Court cannot enter final judgment on this matter, and the Court will grant the parties the opportunity to file briefing addressing the status of the Counterclaims.

An order consistent herewith will immediately follow.

DATED: May **15**, 2023

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
**for** **LATOYA CAMACHO**
Court Clerk Supervisor **05 / 15 / 23**