**PATRICK ANTHONY, Appellant/Defendant**

**v.**

**FIRSTBANK VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Civ. No. 2010-0054

Supreme Court of the Virgin Islands

January 17, 2013

JOSEPH CAINES, ESQ., Law Offices of Joseph Caines, P.C., St. Thomas, USVI, *Attorney for Appellant.*

RICHARD H. DOLLISON, ESQ., Stryker, Duensing, Casner & Dollison, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 17, 2013)

CABRET, *Associate Justice*. In 1995, appellant Patrick Anthony purchased a condominium at Contant View Condominiums from appellee FirstBank Virgin Islands ("FVI"). Anthony also sought and received financing for the purchase from FVI. That same year, Hurricane Marilyn badly damaged Contant View and the insurance underwriter for the condominium association became insolvent before the condominium

association could receive a payout on the insurance policy. The Contant View Condominiums were left uninhabitable and have never been rebuilt. In 2007, Anthony ceased paying on the note to FVI, and FVI filed the underlying action to foreclose on the property. Anthony filed an answer and counterclaim, alleging that FVI was complicit in the condominium association's failure to insure the property. The Superior Court granted FVI summary judgment both on the foreclosure action based on Anthony's admission to ceasing payment and against Anthony's counterclaims because the claims were time barred by the statute of limitations and because Anthony failed to show that FVI had any duty to insure the Contant View Condominiums. For the reasons that follow, we affirm the trial court's grant of summary judgment against Anthony's counterclaims but reverse its grant of summary judgment to FVI on its claim.

## I. FACTS AND PROCEDURAL HISTORY

On August 11, 1995, Anthony, while represented by independent counsel, signed a contract to purchase Unit 2D of Building C in the Contant View Condominiums. The seller was First Virgin Islands Federal Savings Bank, the predecessor of the appellee FVI. Anthony also chose to use FVI's predecessor, First Virgin Islands Federal Savings Bank, as the financing company for the purchase, and signed a promissory note ("the Note") promising to repay the loan of $76,000 plus 9.25% interest. To secure the bank's interest in the Note, Anthony executed a mortgage on the property, which was recorded on October 27, 1995.

On March 1, 2007, Anthony failed to make the promised payment on the Note. FVI accelerated the debt and demanded payment of all sums due and owing under the Note, including $66,580.44 remaining in principal, $14,500.70 in accrued interest and $4,625.45 in an escrow deficit, totaling $85,706.59. Following Anthony's failure to pay on FVI's demand, on April 24, 2007,[1] FVI sued Anthony in the Superior Court of the Virgin Islands seeking a judgment on the Note and foreclosure of the mortgage.

On May 25, 2007, Anthony answered FVI's complaint and denied the allegations that he was in default under the Note. Additionally, in his

---

[1] In its June 8, 2010 Opinion, the Superior Court inadvertently listed the date of the complaint's filing as April 24, 2010. However, a review of the docket and the complaint itself reveal that the correct filing date for the complaint was April 24, 2007.

answer, Anthony averred thirteen affirmative defenses, including a claim that FVI would be unjustly enriched by granting judgment, that FVI had unclean hands, and that FVI breached the contract first and thus excused Anthony of the requirement of continued performance.[2] Anthony's answer also set out five counterclaims. Each of Anthony's counterclaims sought damages based on the same basic factual premise. In September 1995, around the same time Anthony purchased Unit 2D at Contant View, Hurricane Marilyn struck St. Thomas and significantly damaged the condominiums and the common areas.[3] Although the Contant View Condominium Association had an insurance policy which covered the common areas, the insurance underwriter, Geneva Assurance Syndicate Incorporated ("Geneva"), had become insolvent and was incapable of paying on the policy when a claim was submitted. In fact, the Illinois Insurance Exchange, the exchange Geneva was a member of, declared Geneva insolvent in May 1995, before Anthony purchased his condominium and before Hurricane Marilyn hit. Anthony's first counterclaim asserted a breach of contract against FVI, alleging that FVI had a contractual obligation under the Contract for Sale of Unit 2D to provide Anthony with insurance coverage. The other four counterclaims against FVI — negligent or fraudulent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of fiduciary duties — all assert that FVI violated a duty it owed to Anthony by allegedly representing to him that the condominium was insured when it knew, or should have known, it was not.[4] In reply, on June 8, 2007, FVI filed a motion to dismiss all of the counterclaims based on the statute of limitations and on the merits of each. The Superior Court never ruled on FVI's motion to dismiss.

■ Following discovery, on April 9, 2010, FVI moved for summary judgment on the Note and for summary judgment against all of Anthony's counterclaims. On April 23, 2010, Anthony responded with his own

---

[2] Anthony failed to present any factual allegations to support or ground the affirmative defenses.

[3] The factual underpinnings of Anthony's counterclaims are the same as the appeal already decided by this Court in a different case where Anthony and other owners at Contant View sued the insurance broker. *See Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 520-23 (V.I. 2012).

[4] Anthony also asserted claims for compensatory damages and punitive damages as separate counts, but neither is a separate cause of action.

motion for summary judgment on his counterclaims and against FVI's claim. On June 8, 2010, the Superior Court granted FVI's summary judgment motion and denied Anthony's motion. On June 14, 2010, the court issued a judgment for the full $85,706.59 plus $12,676.00 in attorney's fees and costs and ordered foreclosure and a marshal's sale on Unit 2D. On June 16, 2010, Anthony filed a "motion to reconsider" the June 8, 2010 Order and Opinion granting summary judgment. The Superior Court denied the "motion to reconsider" on July 12, 2010. On August 10, 2010, Anthony filed a timely notice of appeal to this Court. *See* V.I.S.CT.R. 5(a)(4).[5]

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Because the Superior Court granted FVI's motion for summary judgment and, in so doing, adjudicated all of the claims of each party, the June 8, 2010 Order is a final order within the meaning of section 32. *See Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 418 (V.I. 2009).

"A trial court's grant of summary judgment is subject to plenary review." *Id.* Because summary judgment is a "drastic remedy," it is only appropriate where " 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[5] We recognize that Supreme Court Rule 5(a)(4) does not identify a "motion to reconsider" as one of the motions that will toll the time to file a notice of appeal in a civil case. But while Anthony captioned his motion as a "motion to reconsider" pursuant to Local Rule of Civil Procedure 7.3, and the Superior Court considered it under that rule, "the substance of a motion, and not its caption, shall determine under which rule that motion is construed." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 611-612 (V.I. 2012) (quoting *Joseph v. Bureau of Corr.*, 54 V.I. 644, 648 n.2 (V.I. 2011)). Despite its caption, Anthony's "motion to reconsider" possessed the formal trappings of a motion to alter or amend a judgment under Superior Court Rule 50. *See, e.g., Harris v. Garcia*, S. Ct. Civ. No. 2008-0082, 2010 V.I. Supreme LEXIS 3, *9 (V.I. Jan. 14, 2010) (unpublished) (collecting cases).

law.' " *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008). *See* FED. R. CIV. P. 56(c).[6]

> When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the non-moving party's conflicting allegations as true if supported by proper proofs. The non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way. Therefore, to survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.

*Williams*, 50 V.I. at 194-95 (internal quotation marks and citations omitted).

## III. DISCUSSION

We begin our discussion by turning first to Anthony's counterclaims which the Superior Court dismissed. Then, we will address the Superior Court's grant of summary judgment to FVI on its claim for the debt secured by the Note and the foreclosure of Unit 2D.

### A. The Superior Court correctly granted summary judgment on the counterclaims.

In its June 8, 2010 Opinion, the Superior Court granted summary judgment against all of Anthony's counterclaims. The Superior Court noted that all of the counterclaims, which were filed against FVI twelve years after the alleged misrepresentations or breach of contract occurred, were barred by the statute of limitations. On appeal, Anthony argues that the Superior Court erred by granting summary judgment based on the statute of limitations.[7] Specifically, Anthony argues that although the

---

[6] According to Superior Court Rule 7, the Federal Rules of Civil Procedure apply in the Superior Court to the extent they are not inconsistent with any other Superior Court Rule.

[7] The Superior Court also addressed each counterclaim on its merits and found that Anthony failed to provide any evidence that FVI had any knowledge of Geneva's insolvency at the time of the sale, that FVI had any duty to provide Anthony with the condition of Geneva's

initial acts occurred twelve years before he filed his counterclaims against FVI and thus outside the applicable statute of limitations, the "continuing violations" exception[8] to the statute of limitations tolled the applicable statute of limitations and each of his claims were thus timely.

■ Normally, the time frame for any statute of limitations begins when the cause of action accrues. Accrual takes place on the "occurrence of the essential facts that give rise to that cause of action." *Burton v. First Bank of P.R.*, 49 V.I. 16, 20 (V.I. Super. Ct. 2007) (citation omitted). However, under the "continuing violations" doctrine, " 'when a [claim] involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the [wrongful] conduct ceased.' " *Bluebeard's Castle, Inc. v. Hodge*, 51 V.I. 672, 685 (D.V.I. App. Div. 2009). The plaintiff must make a threshold showing that his claim involved " 'continual *unlawful acts*, not continual *ill effects* from an original violation' " before a court will consider whether the equitable doctrine is available. *Id.* (emphasis added) (quoting *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)); *see also Felter v. Norton*, 412 F. Supp. 2d 118, 125 (D.D.C. 2006) ("When courts apply the continuing violation doctrine, the claim will not be barred provided that at least one wrongful *act* occurred during the statute of limitations period and that it was

---

solvency, or that FVI had any duty to provide insurance independent of the insurance the Contant View Condominium Association purchased through Geneva. Therefore, the Superior Court found that each counterclaim warranted summary judgment on the merits. Because we find the statute of limitations issue dispositive, we do not address the Superior Court's alternative grounds for dismissal.

[8] In his brief, Anthony also mentioned the "discovery rule" doctrine, which is another equitable doctrine which tolls the statute of limitations in some cases. *See Joseph v. Hess Oil V.I. Corp.*, 867 F.2d 179, 182 (3d Cir. 1989) (applying the discovery rule doctrine to 5 V.I.C. § 31 and noting that the doctrine only tolls the statute of limitations when "the injury or its cause is not immediately evident to the victim."). However, Anthony only provided argument based on the elements of the continuing violations doctrine. Therefore, because Anthony failed to set out any argument to support his citation to the discovery rule doctrine, he waived that argument. *See Bernhardt v. Bernhardt*, 51 V.I. 341, 345 (V.I. 2009) ("[A]ppellate courts will only review a claimed error that ... is supported by argument and citations to legal authority." (citation omitted)). In any event, Anthony discovered his injury no later than 1998, when he, along with the Contant View Condominium Association and other unit owners, sued the insurance broker which used Geneva as the insurance underwriter. *See Anthony*, 56 V.I. at 520-21. Therefore, even granting Anthony the benefit of the discovery rule, his accrual date which begins the running of the statute of limitations would still be no later than 1998. Accordingly, all of his claims, which have no more than a six year statute of limitations, would still have been time barred in 2007 when he counterclaimed against FVI.

committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.") (emphasis added).

Anthony's tort claims have a statute of limitations of two years. 5 V.I.C. § 31(5)(A). His contract claim, on the other hand, has a six year statute of limitations.[9] 5 V.I.C. § 31(3)(A). Anthony argues that the accrual date for his claims should be tolled because he alleged that he

> suffered permanent damages. There has been no repair done at Contant View. The contamination and deterioration of the property has been and still is ongoing. He has no unit. And he is out of over $90,000. The agreement to buy the property was dependent on *the representation that the Condo Association had insurance.*

(Appellant's Br. 14 (emphasis added).) The Superior Court rejected that argument on the grounds that Anthony failed to provide "any facts or evidence establishing that [FVI] continued to commit 'unlawful acts' after its alleged representation that the property was insured." (J.A. 15.)

■ We agree with the Superior Court. Anthony's argument quoted above succinctly condenses each of his claims; they all revolve around a single incident where FVI allegedly represented to Anthony that the condominium's common areas were insured. That single alleged act forms the basis for all five of Anthony's counterclaims. Anthony failed to set out to the Superior Court any claim based on a course of conduct which would be actionable. Furthermore, Anthony failed to point to any

---

[9] No court in the Virgin Islands has applied the continuing violations doctrine to a breach of contract claim. *See, e.g., Burton v. First Bank of P.R.*, 49 V.I. 16, 20 (V.I. Super. Ct. 2007) (considering the doctrine for the tort claims but, without explanation, dealing with a related breach of contract claim without any consideration of the doctrine). *Compare Felter*, 412 F. Supp. 2d at 125-26 (rejecting the doctrine in a Native American rights context); *Press v. Howard Univ.*, 540 A.2d 733, 735 (D.C. 1988) (explicitly rejecting the doctrine as "without any legal foundation" and noting the absence of acts by the defendant within the statutory period); *with Vitek v. AIG Life Brokerage*, No. 06-cv-615, 2008 U.S. Dist. LEXIS 82132, *15 (S.D. Ohio Sept. 22, 2008) ("Vitek contends that the breach [of contract] was a 'continuing violation' and therefore the statute of limitations does not operate to bar his claim. The Sixth Circuit has noted that '[c]ourts have been extremely reluctant to apply [the continuing violation] doctrine outside of the context of Title VII [claims].'" (second, third, and fourth alterations in original) (citations omitted)). Because of our determination that Anthony cannot meet the threshold requirement to qualify for the doctrine, we do not need to decide today whether the doctrine would apply to a breach of contract claim which would otherwise qualify for the doctrine.

particular wrongful act that occurred during the statute of limitations as required under the doctrine. Therefore, because Anthony did not make the threshold showing that his claims involved ongoing wrongful conduct, as opposed to the ongoing effects of a single act, the Superior Court correctly held that the "continuing violation" doctrine does not apply. Accordingly, all of Anthony's counterclaims accrued in 1995 and the statute of limitations on each had long since run when he filed the counterclaims in 2007. We therefore affirm the trial court's grant of summary judgment in favor of FVI on all of the counterclaims.

## B. The Superior Court erred in granting summary judgment in FVI's favor on its claim.

In the same June 8, 2010 Opinion, the Superior Court also granted summary judgment in FVI's favor on its claim for the debt on the Note and ordered foreclosure of the mortgage and marshal's sale of Unit 2D. The Superior Court held that because Anthony admitted that he was liable for the debt and because none of his counterclaims could defeat the action for the debt, Anthony did not present a genuine issue of material fact. On appeal, Anthony argues that the Superior Court erred by failing to view the evidence presented in the light most favorable to the non-movant, in this case himself. We agree.

■ In order to "prevail on a foreclosure claim, the plaintiff must show (1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." *Thompson v. Fla. Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. 2009) (citations omitted). In this case, the only prong the parties dispute is whether Anthony showed that there was a genuine issue of material fact as to the second requirement, that is, whether Anthony was in default under the terms of the Note.

■ In its motion for summary judgment to the Superior Court, FVI argued that Anthony admitted liability and defaulted on the debt by attaching an answer from Anthony to one of FVI's interrogatories wherein Anthony acknowledged he "suspended" payment on the debt in 2007. Additionally, FVI provided an affidavit from Paula N. Edwards, the Vice President of FVI, in which she claimed to have reviewed Anthony's payment history and determined that he owed a total of $85,706.59. However, a review of the answers to interrogatories shows that Anthony

suspended his payments because he believed the debt was already paid in full due to a settlement the bank received in 2007 from a previous lawsuit involving the stock brokers who secured Geneva as the underwriter for the insurance. The answers cannot be read, as both FVI and the Superior Court did, to qualify as an admission by Anthony that he actually owed the amount remaining on the debt.[10] Indeed, attached to a supplemental memorandum of law in opposition to FVI's motion for summary judgment,[11] Anthony provided the Superior Court with a 1098 Form prepared by FVI for the IRS and Anthony which indicated that the debt was fully paid off sometime in 2009. In reply, FVI provided the Superior Court with another affidavit from Edwards, which indicated that the 1098 Form "incorrectly shows that the balance due on [Anthony's] account is zero ($0)." (J.A. 197.) The Edwards affidavit does not explain why FVI represented to the IRS that the loan was paid in full or how the allegedly mistaken document was created.

Although the Superior Court did not expressly address this disparity in the parties' evidence in its June 8, 2010 Opinion, the court did set out its reasoning in its July 12, 2010 Opinion rejecting Anthony's motion to reconsider. There, the Superior Court stated that, although the court considered the 1098 Form, it "based its findings on the Affidavit of Paula Edwards, the Vice President and Operations Manager of FirstBank Virgin Islands, which provided that the Form 'incorrectly show[ed] the balance due on [Anthony's] account [was] zero.'" (J.A. 35-36 (first and third alterations in original).) In other words, the Superior Court determined that the evidence provided by FVI, the affidavit of Edwards, was entitled

---

[10] Anthony also denied being in default in his answer to the complaint.

[11] FVI argues on appeal that the 1098 Form was not previously produced in discovery and was not correctly authenticated before the Superior Court, and therefore we should disregard it. However, FVI never raised the authentication argument in the Superior Court, even though Rule 56 expressly permits a party to object that the evidence identified could not be presented in an admissible form at trial. See FED. R. CIV. P. 56(c)(2). Arguments not raised to the trial court are waived on appeal. See V.I. Port Auth. v. Joseph, 49 V.I. 424, 428 (V.I. 2008). While FVI did argue in the Superior Court that Anthony failed to produce the 1098 Form in discovery, FVI only referenced that argument in its brief to this Court in a perfunctory manner without argument or citation to legal authority. Accordingly, that argument is also waived. See Bernhardt v. Bernhardt, 51 V.I. 341, 346 (V.I. 2009) (" '[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal.' " (quoting Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 36 (1st Cir. 1994)).

to more weight, or was more credible, than the evidence provided by Anthony, the 1098 Form.

■ ■ "It is a basic principle, however, that trial judges should not weigh the evidence [or] make credibility determinations . . . when ruling upon summary judgment motions because these are the functions of the jury." *Williams*, 50 V.I. at 197 (citation omitted). Additionally, before granting summary judgment, the trial court must "view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party . . . ." *Id.* at 194. Here, the Superior Court engaged in impermissible weighing of contested evidence concerning the question of whether Anthony was in default under the Note. The court should have accepted Anthony's evidence that the debt was discharged, the 1098 Form created by FVI, and drawn the inference that Anthony was, therefore, not in default under the Note. Accordingly, since the Superior Court engaged in weighing the evidence at the summary judgment stage and failed to draw the inferences in the light most favorable to the non-movant, the court erred when it granted the drastic remedy of summary judgment rather than permit the case to go to trial on the material issue of default under the Note. Consequently, we reverse the Superior Court's grant of summary judgment on FVI's claim and vacate the order of foreclosure.[12]

## IV. CONCLUSION

Because Anthony filed his counterclaims twelve years after they accrued, well after the statute of limitations had run on all of his claims, the Superior Court correctly granted summary judgment in favor of FVI on all of the counterclaims. However, because the Superior Court engaged in weighing the evidence to determine a material fact rather than present

---

[12] Because we are reversing the grant of summary judgment and vacating the foreclosure order, we do not need to address the Superior Court's determination with regard to Anthony's affirmative defense of unclean hands. The Superior Court disregarded Anthony's claim that FVI had unclean hands because that doctrine is generally only available in equity actions and the Superior Court determined, without citation, that FVI's action was an action at law. Because the issue is "likely to recur on remand" should FVI ultimately prevail at trial, we draw the Superior Court's attention to section 531 of title 28, which states that an action for foreclosure on real property is an equitable action. We express no opinion on whether Anthony has met any of the other elements to succeed on a claim of unclean hands in the event that FVI prevails on its breach of contract claim, which is an action at law, and seeks the equitable remedy of foreclosure. *See Wills v. Young*, 255 F.2d 65, 66, 3 V.I. 674 (3d Cir. 1958) (describing a breach of contract claim in the Virgin Islands as "an action at law").

the disputed fact to a finder-of-fact at trial, the court erred in granting summary judgment in favor of FVI on its claim for debt collection and foreclosure. Therefore, we affirm the Superior Court's grant of summary judgment in favor of FVI on all of Anthony's counterclaims but reverse the court's grant of summary judgment in favor of FVI and vacate its judgment and order of foreclosure. Additionally, we remand this action for further proceedings consistent with this opinion.