NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2949
_____

JAMES CODRINGTON, as Assignee of the rights of
CROSSTECH VI, Inc, TOM CROSSLAND
and EDWIN CORREA,
                                        Appellant

v.

STEADFAST INSURANCE CO; CLARENDON AMERICAN
INSURANCE CO; DEEP SOUTH SURPLUS OF TEXAS LP;
CRC SCU, f/k/a CRUMP INS. SERVICES,

_____

On Appeal from the United States District Court
for the District of the Virgin Islands
(D.C. No. 1-19-cv-00026)
District Judge:  Hon. Malachy E. Mannion

_____

Argued
May 16, 2024

Before:  JORDAN, SHWARTZ and BIBAS, *Circuit Judges*.

(Filed: July 22, 2024)
_____

Rhea R. Lawrence   [ARGUED]
Lee J. Rohn & Associates
1108 King Street – Suite 3
Christiansted, VI   00820
        *Counsel for Appellant*

W. Mark Wilczynski   [ARGUED]
Law Office of W. Mark Wilczynski
P.O. Box 1150
48 Kongens Gade (a/k/a Education Street)
St. Thomas, VI   00804
        *Counsel for Steadfast Insurance Co.*

David S. Hendrix
Gray Robinson
101 E. Kennedy Boulevard – Suite 4000
Tampa, FL   33602

Veronica A. Meza   [ARGUED]
Gray Robinson
333 SE 2nd Avenue – Suite 3200
Miami, FL   33131

Robert J. Kuczynski
Law Office of Beckstedt & Associates
2162 Church Street
Christiansted, VI   00802
        *Counsel for CRC SCU, f/k/a Crump Ins. Services*

––––––––––––––––––

OPINION[*]

––––––––––––––––––

JORDAN, *Circuit Judge*.

In 2007, James Codrington lost his leg when an automobile collided with the motorcycle he was riding. After more than a decade of litigation against the other parties involved in the accident, all of whom were associated with a business called Crosstech Boiler Services, LP or related entities, those defendants assigned to Codrington any rights

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

they had against their own insurance companies. Then, standing in the shoes of those insureds, he brought this action against the insurance companies alleging claims related to coverage, or lack thereof, under the policies in effect at the time of the accident. He now appeals the District Court's orders dismissing for lack of personal jurisdiction his suit against CRC Insurance Services, Inc., formerly known as Crump Insurance Services ("Crump" or "CRC"),[1] and granting the motion of Steadfast Insurance Company ("Steadfast") for summary judgment. For the reasons that follow, we will affirm.

## I.   BACKGROUND[2]

### A.   Crosstech's Work

During the 2000s, Crosstech Boiler Services, LP, a Texas-based company, had a contract to perform services at the HOVENSA oil refinery in the Virgin Islands. In 2005, Crosstech Boiler Services formed a wholly-owned Virgin Islands-based subsidiary, Crosstech V.I., Inc., to fulfill those obligations to HOVENSA.[3] Crosstech V.I. employees were loaned to Crosstech Boiler Services to perform the work for HOVENSA, and the vehicles used in connection with that work were "non-owned hired vehicles by Crosstech [Boiler Services,] LP from Crosstech V.I." (J.A. at 463.) Crosstech Boiler

---

[1] In 2012, CRC Insurance Services, Inc. acquired Crump, which was merged into CRC the following year. For simplicity, we refer to it as "CRC" throughout the opinion.

[2] This background information is drawn from the Magistrate Judge's reports & recommendations and the District Court's opinions granting the defendants' motions to dismiss and for summary judgment, as well as other relevant portions of the record.

[3] At times, for convenience, we refer to those Crosstech entities collectively as "Crosstech."

3

Services had multiple insurance policies, including an automobile insurance policy with Clarendon American Insurance Company ("Clarendon")[4], and a general commercial liability insurance policy with Steadfast.

## B.    The Steadfast Policy

Crosstech obtained its Steadfast policy with the help of CRC, a Texas-based wholesale insurance broker, although CRC did not deal with Crosstech directly. Instead, Crosstech Boiler Services submitted its application for commercial insurance to a Texas-based retail insurance agent called Champion Commercial Insurance Agency, L.L.C. ("Champion"). Champion then worked with CRC, and CRC procured the policy from Steadfast. In its application for the Steadfast insurance policy, Crosstech Boiler Services listed as its business premises an address in Richardson, Texas. Champion later confirmed to CRC that Crosstech Boiler Services had "only one location[,]" its Texas premises.[5] (J.A. at 1036.) The application did not mention or refer to any business operations on the Virgin Islands. Further, the application affirmed that Crosstech Boiler Services, LP did not have any subsidiaries, did not lease employees to or from other employers, was not engaged in a joint venture, and did not have "a labor interchange with any other business[es] or subsidiaries." (J.A. at 1031.)

---

[4] Clarendon was dismissed from this suit in February 2023, and the appellees have no connection to Clarendon or the insurance policy it issued.

[5] The Steadfast policy listed the same Texas location for "all Premises [Crosstech] own[ed], rent[ed] or occup[ied]." (J.A. at 1167.)

4

In June 2007, Crosstech sought to change the named insured on the Steadfast policy from Crosstech Boiler Services, LP to CRS VI, Inc. The amendment was stated to be "just a name change[,]" and there were no other changes to the application. (J.A. at 1140.) The policy still listed the Texas address as the sole location.

The next month, July 2007, a HOVENSA employee emailed a Crosstech employee and said that, because of the volume of work HOVENSA did with "Crosstech," it required Crosstech to increase the amount of its insurance coverage. [J.A. at 1283.] So Crosstech notified Champion, which then notified CRC, and included HOVENSA's initial email request in its correspondence. The only identification of or reference to HOVENSA was in the initial sender's email address domain ("[sender]@hovensa.com"). (J.A. at 1283.) It contained no discussion of the work performed or the fact that it was done in the Virgin Islands. In fact, the only part of the email that contained any information about the Virgin Islands was the phone number in the sender's email signature block, which had the Virgin Islands' area code, and cryptic references to "CRS VI." (J.A. at 1283.)

Later, in January 2008, Tom Crossland, who was then President of the Crosstech entities, filled out an application for a new insurance policy for that year, which listed CRS VI, Inc., "Crosstech Boiler Services, Inc.," and "Crosstech V.I." as applicants. (J.A. at 1285-92.)

## C. The 2007 Accident and Litigation

Sometime in March 2007, Edwin Cosme Correa, then an employee of Crosstech V.I., Inc., crashed into Codrington while Correa was driving a Crosstech V.I. car and

Codrington was on a motorcycle. Codrington promptly sued Correa, Crosstech V.I., and Crossland for negligence in the Virgin Islands Superior Court.

In 2010, Crosstech tendered the defense and indemnification of Codrington's claims to Steadfast under the general liability insurance policy.[6] Crosstech did so at Codrington's request, though both understood that the Steadfast policy was "not an automobile policy." (J.A. at 630, 638.) This was the first time Steadfast was notified of the accident that had occurred more than three years earlier.

Steadfast denied the claim just a few weeks later, saying, "there is no coverage for [Crosstech] or any other insured under the subject policy per exclusion # I(2)g[.]" (J.A. at 651.) That exclusion states: "*This insurance does not apply to ... '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto,' ... owned or operated by or rented or loaned to any insured.*" (J.A. at 653.) Steadfast received no other correspondence about those claims until 2019, when it was served with a complaint in the present litigation.

In June 2018, nearly eight years after Steadfast denied the claims in 2010, Crosstech V.I., Inc. and Correa entered into a $5,000,000 consent judgment in favor of Codrington. Crosstech V.I., Inc. assigned to Codrington "any and all rights" against the

---

[6] Crosstech V.I., Inc., the sole Crosstech entity Codrington initially sued in the 2007 litigation, was not a named insured under the Steadfast policy. Instead, that policy listed Crosstech Boiler Services, LP, later changed to CRS VI, Inc., as the only named insureds, and Vulcan Chemical in Louisiana and Arlington ISD in Texas as the only additional interests under the policy. None of those entities were initially named defendants in Codrington's 2007 suit.

insurance companies "arising out of or in any way related to" the 2007 litigation. (J.A. at 200.)

### D.   Procedural History

Codrington filed the present action in the Virgin Islands Superior Court in April 2019, against CRC and Steadfast, among others.[7] CRC removed the action to the District Court. In the operative complaint, Codrington seeks a declaratory judgment that the assignment of rights is valid and enforceable (count I). He alleges claims against Steadfast under 22 V.I.C. § 2 for violating the duty of good faith and fair dealing in denying Crosstech's insurance claim (count II),[8] for negligent and/or intentional misrepresentation relating to the scope of the policy's coverage (count VIII), and for "falsely claiming there was no coverage" (Count IX). (J.A. at 362.) Against CRC, Codrington alleges claims under 22 V.I.C. § 2 for violating the duty of good faith and fair dealing for failing to properly underwrite the insurance policy (if it turns out the claim is not covered by the Steadfast policy) (count III), for breach of contract (count IV), for

---

[7] All of the other defendants have either been dismissed (Arch Specialty Insurance Company of Texas and Clarendon American Insurance Company) or were never served with the complaint (Deep South Surplus of Texas, L.P.).

[8] That statute states, in its entirety, as follows:

The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

22 V.I.C. § 2.

7

negligent underwriting of the policy (counts V & VI), and for negligent and/or intentional misrepresentation (count VII).

CRC moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue to Texas. After jurisdictional discovery, CRC renewed its motion. A Magistrate Judge recommended that the motion be granted, and the District Court agreed, so CRC was dismissed from the case.

For its part, Steadfast moved for summary judgment, arguing that Codrington's claims were time-barred by the applicable statutes of limitations, that the assignment of rights could not confer standing on Codrington because the statutes of limitations had already run, and that no discovery was required because the claims are premised upon a traffic accident, which was excluded under the Steadfast policy. Codrington moved to stay the motion pending the completion of discovery. The District Court permitted limited discovery on the statute-of-limitations issue. A Magistrate Judge recommended the motion be granted because Codrington's claims were time-barred. The District Court agreed and granted the motion.

Codrington has timely appealed both the dismissal of CRC and the summary judgment for Steadfast.

**II.   DISCUSSION**[9]

Codrington argues that the District Court erred in finding that it lacked personal

jurisdiction over CRC and in granting Steadfast's motion for summary judgment based

on his claims being time barred.  We address each of those contentions in turn.

**A.      The District Court Lacks Personal Jurisdiction Over CRC.**[10]

"Establishing personal jurisdiction in the Virgin Islands involves a two-part

analysis." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  First,

exercising jurisdiction over the nonresident defendant must be justified by the Virgin

---

[9] The District Court had jurisdiction under 28 U.S.C. § 1332.  "Ordinarily the proceedings in a district court must be final as to [] all causes of action and parties for a court of appeals to have jurisdiction over an appeal under 28 U.S.C. § 1291." *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir. 2006).  "The classic definition of a 'final decision' is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).  As such, "an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a final order for purposes of appeal under 28 U.S.C. § 1291." *Id.* (internal quotation marks omitted).  However, "[p]ersons who are not served and do not appear are not parties to an action and thus do not prevent the judgment from becoming final." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1366 n.3 (3d Cir. 1992).  Steadfast argues we lack jurisdiction over this appeal because the underlying order "did not adjudicate anything regarding" defendant Deep South Surplus of Texas, L.P., and so "it is a non-final and non-appealable order[.]"  (Steadfast Answering Br. at 6.)  But Deep South Surplus was never served with process in this action, nor did it ever appear.  Thus, it is not a party to the action, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[10] "Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law, and therefore we will exercise plenary review over the District Court's determination that it lacked personal jurisdiction in the present case." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 329 (3d Cir. 2009) (citation and internal quotation marks omitted).

Islands' long-arm statute, 5 V.I.C. § 4903, and second, "the nonresident defendant must have minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process[,]" *Metcalfe*, 566 F.3d. at 330; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  Codrington argues that there is a statutory basis for exercising jurisdiction over CRC under the Virgin Islands' long-arm statute and that doing so comports with due process.  We disagree with the first of those two assertions and so need not address the second.

The long-arm statute provides, in relevant part[11]:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person[ ]
    (1) transacting any business in this territory;
    (2) contracting to supply services or things in this territory;
    … [or]
    (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.

5 V.I.C. § 4903.  Separately, the constitutional due process inquiry has three parts.  "First, the defendant must have 'purposefully directed [its] activities' at the forum."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (alteration in original) (quoting *Burger King Corp.*, 471 U.S. at 472).  "Second, the litigation must 'arise out of or relate to' at least one of those activities."  *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise

---

[11] Codrington argues only these three subsections as providing for personal jurisdiction over CRC.

'comports with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476) (cleaned up).

The plaintiff bears the burden of demonstrating facts that establish personal jurisdiction. *Metcalfe*, 566 F.3d at 330. "In deciding a motion to dismiss for lack of personal jurisdiction, we take the allegations of the complaint as true. But once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citation omitted). Because CRC put personal jurisdiction in issue, Codrington had to "prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe*, 566 F.3d at 330 (cleaned up). Here, the District Court did not hold an evidentiary hearing, and so Codrington needed only to "establish a prima facie case of personal jurisdiction … [to be] entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *O'Connor*, 496 F.3d at 316. We assess whether Codrington has established a prima facie case, "assuming the sworn allegations that appear in the … affidavit and the other documentary evidence on record are true and construing factual disputes in [his] favor." *Metcalfe*, 566 F.3d at 331.

### 1. The Long-Arm Statute

Subsection (a)(1) of the Virgin Islands long-arm statute applies to "a claim for relief arising from" an entity's "transacting any business" in the territory. 5 V.I.C. § 4903(a)(1). "[T]ransacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act" and "can be satisfied by only a single

11

act[.]" *Metcalfe*, 566 F.3d at 331-32. It does, however, "require[] that a defendant engage in some type of purposeful activity within the territory." *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 176 (2012).

In this case, the evidence unequivocally demonstrates that CRC did not transact business in the Virgin Islands, nor did it engage in any "purposeful activity" in the territory relating to the 2007 policy. It brokered an insurance policy between Crosstech Boiler Services, LP – a Texas company with (as CRC was told) one location in Texas (a fact that Champion, also a Texas-based company, confirmed) with additional insureds in Texas and Louisiana – and Steadfast, a Delaware-based company. The Steadfast policy makes no reference to any party or activity in the Virgin Islands. In addition, CRC did not deal directly with Crosstech. Its only communication was with Steadfast, the Texas insurer, and Champion, the Texas insurance retailer.[12] Nothing suggests CRC's business

---

[12] In his Reply Brief, Codrington for the first time cites evidence in the record that he argues shows that CRC dealt directly with Crosstech. [Reply Br. at 3-4.] Despite his assertions, the record citations do not demonstrate any contact between CRC and Crosstech. The first one is to an email from CRC to Steadfast in which the CRC representative states, "the insured [Crosstech] is telling us" that it had sent information directly to Steadfast. (J.A. at 1078.) But when read in context with adjacent pages, CRC's statement was based on communications with Champion only, not Crosstech.

The other citations are to 2008 emails related to an audit that Steadfast had done with a third party in 2008, which resulted in a retroactive increase to Crosstech's premium for the 2007 policy. That increase was based on a "physical audit" and/or the "financials of Crosstech VI Inc." (J.A. at 1122; Reply Br. at 7.) Crosstech asked for a copy of the audit report (through Champion), which included financial data that was confidential. CRC asked Champion for Crosstech's contact information so the report could be sent to Crosstech directly. Based on that exchange, Codrington asserts that "Crump [i.e., CRC] … refused to provide Champion with Crosstech's financial data, and instead, the 'confidential information' had to be transmitted directly to the insured." (Reply Br. at 3.) Codrington's framing omits the critical fact that CRC did not send the report (or anything else) to Crosstech, because CRC did not have it. CRC asked

12

was transacted in the Virgin Islands, and it certainly did not engage in any "purposeful activity" there, so personal jurisdiction over CRC is not supported under § 4903(a)(1).

Subsection (a)(2) applies to those "contracting to supply services or things in this territory." 5 V.I.C. § 4903(a)(2). It requires that "the contract be performed, at least in part, in the Virgin Islands and that the cause of action arise out of the contract. When a defendant is aware that the Virgin Islands is the ultimate destination of the goods it is supplying, the contract is said to be performed (at least in part) in the Virgin Islands." *Metcalfe*, 566 F.3d at 332 (citation omitted). Again, however, there is no evidence that CRC was aware that the Virgin Islands was at all relevant to the 2007 policy it was brokering, let alone where it would be performed. Not only were all of the parties named or related to the transaction charted in Texas (or Louisiana), but Crosstech Boiler Services, LP's insurance application explicitly said that it did not have any subsidiaries, did not lease employees to or from other employers, was not engaged in a joint venture, and did not have a labor interchange with any other business or subsidiaries. Codrington has provided no meaningful evidence to support the notion, as it relates to the relevant 2007 policy, that CRC had any knowledge that the insurance services would be rendered to an entity in the Virgin Islands.

Subsection (a)(6) applies to those "contracting to insure any person, property, or risk located within this territory at the time of contracting." 5 V.I.C. § 4903(a)(6). For

Champion for Crosstech's contact information (which was the Texas address) so it could provide it to Steadfast, and the record indicates that Steadfast, not CRC, had direct communications with Crosstech.

13

all the reasons previously discussed, including the locations of the parties and entities and the information in the insurance application, the 2007 policy did not insure any "person, property, or risk" located in the Virgin Islands. Everything about the application for the 2007 policy, and the policy itself, was to insure persons, property, or risk located in Texas (and potentially Louisiana), not the Virgin Islands.

In sum, Codrington failed to produce evidence to support a statutory basis for the Virgin Islands to exercise personal jurisdiction over CRC, as required for the establishment of a prima facie case, so we need not consider the due process implication of exercising personal jurisdiction. We will therefore affirm the District Court's grant of CRC's motion to dismiss.

## B. Steadfast is Entitled to Summary Judgment.[13]

### 1. Codrington's claims are barred by the applicable statutes of limitations.

Codrington argues that his claims against Steadfast are not time-barred because they did not accrue until entry of the 2018 consent judgment. He is mistaken.

In diversity actions, we "must apply the substantive laws of [the] forum[,]" which include statutes of limitations. *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015). Thus, consistent with Virgin Islands law, Codrington's negligent and intentional

---

[13] "We review the District Court's grant of summary judgment de novo." *PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317, 320 (3d Cir. 2023). "We ask whether any material fact is genuinely disputed and whether, viewing the facts most favorably to [the nonmoving party], [the moving party] merits judgment as a matter of law." *Id.* "A dispute is 'genuine … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (omission in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

misrepresentation claims have two-year statutes of limitations, *see Brouillard v. DLJ Mortg. Cap., Inc.*, 63 V.I. 788, 795 (V.I. 2015) (citing 5 V.I.C. § 31(5)(A)), as do his fraudulent conduct claims, *see Martin v. Martin*, 54 V.I. 379, 390 (V.I. 2010). It is unclear whether the Virgin Islands would apply a two-year or a six-year statute of limitations to a claim for breach of the implied contract of good faith and fair dealing. *Compare Guardian Ins. Co. v. Khalil*, 63 V.I. 3, 21-22 (V.I. Super. Ct. 2012) (applying a two-year limitations period to breach of the duty of good faith and fair dealing), *with Pegasus Holding Grp. Stables, LLC v. Share*, No. ST-2014-CV-0000069, 2020 WL 8020083, at *5 (V.I. Super. Ct. Aug. 21, 2020) ("The nature of the breach of the covenant of good faith and fair dealing sounds in contract, and therefore the six-year statute of limitations that applies to actions in express and implied contract applies, not the two-year statute of limitations."). Under either statute of limitations, however, all of Codrington's claims against Steadfast are time-barred.

"[T]he time frame for any statute of limitations begins when the cause of action accrues." *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 (2013), *as amended* (June 21, 2013). "Accrual takes place on the occurrence of the essential facts that give rise to that cause of action." *Id.* (internal quotation marks omitted). Here, the essential facts that give rise to Codrington's claims against Steadfast had occurred by the time of Steadfast's allegedly improper denial of coverage in 2010 in response to Crosstech's request for defense and indemnification.

As assignee, Codrington "stand[s] in the shoes of the" assignor, Crosstech and Correa, bringing those claims that they could have otherwise brought themselves.

15

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014). It does not matter that Codrington was not assigned those rights, and thus could not bring any claims, until 2018. While that may have been the earliest time *Codrington* could bring those claims, they could have been brought by Crosstech once they accrued.[14] The denial in 2010 was a single act that put Crosstech on notice that it must make a timely claim or risk losing it. Accordingly, the limitations period ran to 2016 at the latest for Count II, and to 2012 for Counts VIII and IX, and, therefore, Codrington's claims against Steadfast, initially filed in 2019, are time-barred unless tolled.

Before the District Court, Codrington argued that the continuing violations doctrine applied. He has all but abandoned that argument on appeal, and rightly so. Under the continuing violations doctrine, "when a claim involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the wrongful conduct ceased." *Anthony*, 58 V.I. at 230 (cleaned up). "The plaintiff must make a threshold showing that his claim involved continual *unlawful acts*, not

---

[14] Much of Codrington's argument on appeal focuses on whether claims for contribution and indemnification accrue after a judgment has been entered. The words "contribution" and "indemnification" appear in count II of the operative complaint but that pleading does not contain any claims for contribution or indemnification. Instead, Codrington alleges claims against Steadfast under 22 V.I.C. § 2 for violating the duty of good faith and fair dealing (count II), for negligent and/or intentional misrepresentation (count VIII), and for fraudulent conduct (count IX). The factual allegations that form the basis of those claims accrued no later than the 2010 denial. There are no allegations that Codrington sought any contribution or indemnification from Steadfast after he was assigned Crosstech's and Correa's rights. As the complaint contains no claims for contribution or indemnification, and the factual averments allege that denial occurred in 2010, we need not speculate whether different claims based on different facts would have been timely.

16

continual *ill effects* from an original violation before a court will consider whether the equitable doctrine is available." *Id.* (emphases in original) (internal quotation marks omitted). Again, the 2010 denial was a single act that unequivocally denied all coverage, including denial of the duty to defend and to indemnify. There were no further denials after that time, and Steadfast had no further contact or involvement until the present action was filed against it in 2019, so no "unlawful acts" were recurring or ongoing. The continuing violations doctrine is plainly inapplicable here. Therefore, any harm that flowed from Steadfast's denial is best characterized as the "ill effects" of Steadfast's 2010 denial, not any continuing unlawful act.

Codrington also argues that equitable tolling should be applied to save his claims. But he never raised that argument before the trial court, and we decline to consider it for the first time on appeal. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261 (3d Cir. 2009) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal." (internal quotation marks omitted)).

### 2. The Steadfast Policy Did Not Cover the Underlying Accident.

Even if Codrington's claims were not time-barred by the applicable statutes of limitations, Steadfast would still be entitled to summary judgment because the policy at issue did not cover Codrington's claims. The Steadfast policy contained an exclusion for damages or injuries resulting from automobile accidents, and Steadfast explicitly cited that provision in its 2010 denial letter.

In his motion to stay Steadfast's motion for summary judgment before the District Court, Codrington argued that, because there had not yet been discovery, he had "not had

17

an opportunity to prove that the [policy] extended to auto accident claims under a theory of respondeat superior." (J.A. at 768.) But discovery would not impact that analysis. "In the Virgin Islands, the interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law." *James v. Guardian Ins. Co.*, 69 V.I. 26, 33 (V.I. Super. Ct. 2015) (cleaned up). And the Virgin Islands insurance code provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy[.]" 22 V.I.C. § 846. We "should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *James*, 69 V.I. at 33. "If the terms of a policy are unambiguous, it must be construed according to its plain language." *Id.* at 34.

Section I(A)(2)g in the Steadfast policy states: "This insurance does not apply to … '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any … 'auto,' … owned or operated by or rented or loaned to any insured." (J.A. at 581, 583.) That is about as clear as the English language can get. It is an unambiguous exclusion of coverage for bodily injury and property damage arising from automobile accidents from the policy's coverage. Thus, Steadfast is entitled to summary judgment on that basis as well.

In short, Codrington's claims are untimely, and, as a matter of law, the policy at issue clearly and unambiguously excluded coverage for the underlying automobile accident. We will therefore affirm the District Court's grant of summary judgment to Steadfast.

18

**III.    CONCLUSION**

For the foregoing reasons, we will affirm the District Court orders at issue.